Sobrinos de Ezquiaga *v.* Munítiz.

Appeal from the District Court of Guayama.

No. 67.—Decided June 27, 1906.

Appeal—Evidence—Bill of Exceptions—Statement of Facts.—The Supreme Court will not consider on appeal the evidence taken at the trial, unless the same is set forth in a bill of exceptions or statement of facts.

Id.—Facts Alleged—Questions of Law.—Where the facts alleged in a complaint and answer are identical and the parties agree thereto, but differ only as to the construction to be given thereto, a question of law is raised, and the appellate court may consider the same without the necessity of a bill of exceptions or statement of facts.

Contracts of Partnership and Participation—Requirements—Special Partner—Managing Partner.—It is a necessary requisite for the existence of a contract of partnership on joint account, that the capital of the special partner shall be subject to the results, whether profitable or unprofitable, of the business, and the managing partner is not obliged to return the same

until the expiration of the term for which the partnership is created, and then only after a liquidation of the business.

ID.—CONTRACTS OF COMMERCIAL LOAN.—The plaintiff having contracted to give the defendant credit by agreeing to honor all his orders, whether for merchandise or money, up to a fixed amount, and the defendant bound himself to make partial payments at such times as might be convenient, and the plaintiff was to receive a certain profit of the business in lieu of interest on the advances, but reserved to itself the right to terminate the contract upon six months' notice; *It was held*, That the plaintiff did not enter into a contract of partnership with the defendant.

The facts are stated in the opinion.

Messrs. *Acuña and Méndez* for plaintiff.

Mr. *López Landrón* for defendant.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

This is an appeal taken by Modesto Munítiz y Aguirre from a judgment rendered by the District Court of Guayama in the action prosecuted against him by the commercial firm of Sobrinos de Ezquiaga for the recovery of $80,199.40, by which he was adjudged to pay the sum claimed, with interest thereon from December 3, 1904, when the complaint was filed, until full settlement, at the legal rate of 6 per cent per annum, and the costs.

The complaint was filed December 3, 1904, and is based upon the following facts:

"1. That the plaintiff is a commercial firm domiciled in San Juan, P. R., established under the firm name of Sobrinos de Ezquiaga, by instrument executed December 31, 1901, before Notary Santiago R. Palmer, which instrument is duly recorded in the Commercial Registry; and as such commercial firm it is the liquidator, with full powers, of the firm which was constituted under the same firm name and with the same domicile by instrument of January 28, 1894, before Notary José Agustín de la Torre, the latter having also been the assignee and acquirer of all the assets and liabilities of another prior firm, which had been established with the same domicile and under the same firm name of Sobrinos de Ezquiaga on January 13, 1887, by instrument executed before Notary Juan R. Torres, and dissolved by reason of the expiration of the term for which it was established, on December 31, 1893. By reason of these successive articles of copartnership and the transfer

of the rights and agreements as to liquidation therein contained, the plaintiffs continue to represent the legal entity of the firm of Sobrinos de Ezquiaga established, as has been said, on January 13, 1887.

"2. That on November 30, 1893, the firm of Sobrinos de Ezquiaga and the defendant, Modesto Munítiz y Aguirre, executed a public instrument in this city before Juan R. de la Torre, a notary of the same, embodying therein a certain contract entered into for the maintenance of the commercial establishment which said defendant was conducting in the municipal district of Cayey.

"3. That in the said contract the following was agreed: First, That Sobrinos de Ezquiaga would open at once a credit to an amount not to exceed 25,000 *pesos,* commercial currency, in favor of the defendant, which amount they would deliver to him upon his orders and demands in cash, provisions and merchandise as he might require for his business, and which would be charged to the defendant in the account current which the firm would open in his name for this purpose. Second, That the defendant likewise agreed to pay on account current partial sums in the form most convenient to him, for the purpose of liquidating his indebtedness at such times as he might be able to do so; it being agreed, that as long as the defendant made such payments, Sobrinos de Ezquiaga would continue to make the deliveries to him which he might need for his establishment, so as to enable him always to have a stock on hand. Third, That no term for the duration of said contract was fixed, but it was agreed that when Sobrinos de Ezquiaga should deem it in furtherance of their interests, they would give an advance notice of six months to the defendant, for the full settlement of the balance in their favor in the acount current; which balance it was likewise agreed the defendant should pay for the purpose of settling his entire indebtedness.

"4. Furthermore, the contracting parties bound themselves to observe, comply with and execute said contract strictly in accordance with the literal text thereof, without any interpretations or tergiversation whatsoever, all costs, expenses, loss and damage caused one party by the other, through the violation of said contract, being defrayed by the party violating it.

"5. That by a clause added to said contract before it was signed the contracting parties agreed that if the defendant should require credit in a sum greater than the 25,000 *pesos* mentioned in the first clause, and Sobrinos de Ezquiaga should have no objection to furnishing it, they might do so and charge the excess on the account current under the same guarantees and payment of expenses stipulated as to said 25,000 *pesos.*

"6. By virtue of this contract Sobrinos de Ezquiaga opened an account current in their books in the name of the defendant, which comprises the deliveries made by the former and the payments made by the latter between that date and the 1st of May of the current year, 1904, on which date a balance having been struck, it showed a balance in favor of the plaintiff and against the defendant amounting to $80,-199.40, United States currency.

"7. In accordance with the stipulations referred to in the third section of the third allegation of this complaint—that is to say, that relating to the granting of a period of six months for the payment of the balance of the account current—the plaintiffs made a demand upon the defendant on May 17 of the current year, 1904, through Notary José E. Martínez Quintero, for the payment, within a period of six months, of the said balance of $80,199.40; in reply to which demand the defendant stated 'that he had no answer to make,' this answer being embodied in the return made by said notary, who had gone to the residence of the defendant on the 18th of said month of May.

"8. That the defendant has not paid the plaintiffs either the whole or any part of the balance owed, although more than six months have expired since the date upon which demand for payment was made."

In view of these statements the plaintiffs concluded with the prayer that by virtue of this complaint and the evidence which may be submitted, judgment be rendered in due time adjudging the defendant:

"1. To pay the plaintiffs $80,199.40, United States currency, due as the balance of his account current.

"2. That he likewise pay the interest on said sum from this date until full payment is made, at the legal rate of 6 per cent per annum, and,

"3. That he also pay all the costs of these proceedings."

The defendant in his answer made a general denial of all these facts and the ground stated in the complaint, and alleged the following facts in opposition thereto:

"1. The firm name used by the plaintiffs of 'Sobrinos de Ezquiaga,' a special copartnership domiciled in the city of San Juan, P. R., has belonged successively to a number of commercial companies, which

differ by reason of the persons and number of partners, the contributions of each thereto, the copartnership capital, the distribution of profits, and other essential stipulations of their contracts or articles of copartnership.

"2. That under the ambiguous and misleading firm name of Sobrinos de Ezquiaga a number of commercial companies domiciled in San Juan have been succeeding each other, viz.:

"(a) One from January 13, 1887, to December 31, 1893;

"(b) Another from December 31, 1893, to December 31, 1901; and

"(c) The present one, from December 31, 1901, to December 31, 1906.

"3. That the liquidation of the commercial firm of Sobrinos de Ezquiaga established on January 13, 1887, was assumed without previous express agreement of all its partners, by the company which succeeded it on January 26, 1894, under the same name.

"4. That the liquidation of this commercial firm of 'Sobrinos de Ezquiaga,' established January 26, 1894, was taken charge of in the same form, without the express agreement of all its partners, by the present firm of Sobrinos de Ezquiaga, constituted by the instrument of January 2, 1902.

"5. That these three different entities, with different rights and obligations, and with different constitutive titles and bases, have been confounded under a single firm name and have used the same banking credit, notwithstanding the fact of being so different.

"6. That the commercial firm of Sobrinos de Ezquiaga, established by instrument of January 13, 1887, entered into a contract with the defendant, Modesto Munítiz y Aguirre, on November 30, 1893, before Juan R. de Torres, a notary of San Juan, in which it was agreed: By the first clause, to open a credit up to the sum of 25,000 *pesos* in favor of Munítiz which was to be delivered to him upon his order and demand in cash, provisions and merchandise as he might require for his business, and that they would be charged by the firm of Sobrinos de Ezquiaga on the account current which they were to open in his name for the purpose; by the second clause Mr. Munítiz agreed to pay also on account current partial sums in the form most convenient to him for the purpose of liquidating his indebtedness at such times as he might be able to do so, but as long as he continued to make such payments the company would continue to make to him such deliveries as he might need for the establishment, so that he would always have a stock on hand; by the third clause no term was fixed for the duration of the contract, but it was provided that the firm of Sobrinos de Ezquiaga, whenever it should deem it in furtherance of its interests,

should give advance notice of six months to Munítiz for the full settlement of the balance in its favor in the account current, which balance Munítiz would be obliged to pay for the purpose of covering his total indebtedness; under the fourth clause, Sobrinos de Ezquiaga could assume charge of the commercial establishment of Munítiz in the event of the latter's absence or his inability to conduct the business, and it could either continue or liquidate it; by the fifth clause it was agreed that the profits from this business of Munítiz should be divided equally between him and his creditors; and by the sixth clause Munítiz agreed to make his balances after advising and with the intervention of Sobrinos de Ezquiaga, and it was finally agreed that by consent of both parties the credit could be extended, without any limit being fixed.

"7. It appears from the foregoing facts, in the first place, that the alleged balance of the account current claimed by the plaintiffs upon the inadmissible assumption that it was due, does not belong to the special copartnership of 'Sobrinos de Ezquiaga,' the claimant, founded on December 31, 1901, and now doing business, but to another different partnership, which has already been dissolved—that is to say, that of Sobrinos de Ezquiaga established on January 13, 1887—not all of the members of which have assigned or transferred this part of the assets to the present plaintiff firm, nor have they authorized it to represent the liquidation because it did not exist either at the time of the constitution or at the dissolution of the original company. This is borne out by the fact that the assets of the firm of 1887 were not taken as capital by that of 1901 when the latter was established. Consequently, the alleged assignment of assets and liabilities from one commercial firm to the other has not taken place.

"8. From another point of view, Clauses IV, V and VI of said instrument of November 30, 1893, clearly indicate that 'Sobrinos de Ezquiaga,' of 1887, in liquidation (not the present firm) are copartners in the share of profits with power to take part in the business of Munítiz; they are not mere loan creditors, but are subordinated to the contingencies of profit or loss from the commercial transactions of the defendant. For this reason 'Sobrinos de Ezquiaga,' in liquidation, established in 1887, reserved under the third clause the right to discontinue the joint accounts and cease to make advances, if they should foresee losses.

"9. The balance claimed corresponds to a partial account current, and not a complete one of the loss and profit in the total balance of the merchant Munítiz. The account current referred to in the said

clauses is not that of a single object or specific person, but that comprising all the commercial business of the defendant with its profits and losses, which is what must be liquidated, balanced and paid, according to the resultant.balance, with the intervention of 'Sobrinos de Ezquiaga,' of 1887, in liquidation, after six months' notice in advance, which was not given. The balance demanded must be an item subordinate to the general account current of all the business of Munítiz, as expressly stipulated.

"10. Notwithstanding the facts stated, Juan José Arsuaga y Beraza, appearing as the manager of the special copartnership of 'Sobrinos de Ezquiaga,' founded on January 2, 1902, which styles itself the liquidator of the firm of the same name which was dissolved December 13, 1901, by notarial act of May 17 last, directed the notary to make demand upon Modesto Munítiz Aguirre for payment within six months, of the sum of $80,199.40, which according to the contracts executed between Munítiz and the firm of 'Sobrinos de Ezquiaga,' of 1887, he claims to be due the firm he represents. The right to liquidate the firm of 'Sobrinos de Ezquiaga,' which was dissolved on December 31, 1901, by the present firm of 'Sobrinos de Ezquiaga,' is alleged to be established by the insertion of the second clause of the instrument of January 2, 1902, which reads as follows:

" 'That they confer by mutual agreement the liquidation of the dissolved firm upon the new firm which has been established under the same firm name of Sobrinos de Ezquiaga, a special copartnership, domiciled in this city, of which some of the parties hereto become members, the managing members of the latter being authorized jointly and severally, to make the liquidation, to execute deeds of purchase and sale of all kinds, cancellations, mortgages, assignments, and other instruments, with no limitation whatsoever with respect to the real property belonging to the dissolved firm.'

"He also seeks to establish this right by a certified copy of the instrument of constitution of the commercial special copartnership executed on the same date as the previous one, before the same notary, the pertinent part of the fifth clause of which provides:

" 'The partners, Nicasio and José Pío Arsuaga y Garayalde, José Cruz Garayalde y Ayesteran and Juan José Arsuaga y Beraza, shall, as managing partners, have charge of the administration of the company without distinction.'

"But, as has been seen, the assets and liabilities have not been transferred by the former to the present firm of Sobrinos de Ezquiaga, by all the partners who constituted the former.

"11. The defendant, on the ground of the foregoing facts and antecedents transcribed, has filed a formal complaint against the plaintiffs and has prayed the District Court of San Juan to render final judgment avoiding and anulling as inefficient the demand served in that city by Juan José Arsuaga, as the manager of the commercial firm of 'Sobrinos de Ezquiaga,' upon Modesto Munítiz on May 17, 1904, through Notary José Ezequiel Martínez Quintero.

"Second. As a consequence, from the facts alleged in opposition to the complaint, we deduce the following conclusions:

"(*a*) That the plaintiffs, Sobrinos de Ezquiaga, have no cause of action for the recovery of the balance of the account current against the defendant.

"(*b*) That the said account current is not an account whose liquidation has terminated, inasmuch as it does not contain the items pertaining to the liquidation of the joint accounts between the predecessors of the plaintiffs and the defendant, and that the former cannot waive their character of copartners, in order to assume that of creditors alone.

"(*c*) That by virtue of the complaints filed in the District Court of San Juan by my client, Munítiz, against the plaintiffs, Sobrinos de Ezquiaga, for the annulment of demands and the rescission of a contract, there are actions pending between these same parties involving the same object to which this litigation relates."

And he concluded with a prayer to the court for final judgment holding that the law and the facts are in favor of the defendant, Modesto Munítiz, and, therefore, dismissing the claim of the plaintiffs against whom the costs should be taxed.

The trial having been held and the evidence heard, the District Court of Guayama rendered the following judgment:

"*No. 96.—Sobrinos de Ezquiaga* v. *Modesto Munítiz*. Recovery of balance of account current. On April 10, 1905, this cause was called for trial in its order according to the calendar, and the plaintiffs and defendant appeared through their counsel, the plaintiffs stating that they were prepared to proceed. The court, after having heard the complaint, the answer thereto, the testimony of the witnesses and the documentary evidence produced by the plaintiffs, the defendant not having produced any witnesses, but accepting the documentary evidence of the plaintiffs of November 30, 1893, and the arguments of counsel, reserves judgment. On this 26th day of April, 1905,

the court *holds:* That the law and the facts are in favor of the plaintiffs and, therefore, it orders that the latter recover from the defendant, Modesto Munítiz, the sum of $80,199.40, as the balance of his account current, plus interest on said sum from December 3, 1904, the date upon which the complaint was filed, until full payment thereof, at the legal rate of 6 per cent per annum, with the costs of this action against the defendant; and in view of the fact that the claim of the plaintiffs is secured by an attachment upon the personal and real property described in the return upon the writ of attachment issued in this action, the execution of such attachment is ordered and that an order of sale issue to the marshal of this court for the sale in proper form of the estate attached, at public auction, at the entrance to this court, on any day, at the hours fixed by law, after notice of the date, place and mode of the sale by means of a notice to be published once a week for three consecutive weeks in the newspaper of largest circulation in this judicial district, and also by means of three posters to be affixed, one on the properties, another at the entrance of this court, and the other in one of the most public places in this judicial district; and the marshal shall sell said estate to the highest bidder, executing to him a deed of sale to said estate; and from the proceeds of the sale the marshal shall settle the costs of this action, shall pay the plaintiffs or their representative the sums awarded to them in this judgment, and the remainder of the proceeds shall be delivered to the defendant or his representative; and if the sale should not produce sufficient money to satisfy this judgment, it is ordered that execution issue against other property of the defendant sufficient to satisfy it. Done, pronounced and published in open court this 26th day of April, 1905.—Charles E. Foote, judge of the district court. Attest: Franco. Morales, secretary of the court.

"Entered this 26th day of April, 1905.—Morales, secretary."

From this judgment Modesto Munítiz took an appeal, and the transcript of the record having been transmitted to this Supreme Court together with a copy of the evidence submitted, authenticated by the reporter of the court and counsel for the appellant, and the respective briefs having been filed, a day was set for the hearing which was had with the attendance of counsel for the parties, who made their respective arguments.

Passing now to an examination of the questions at issue in

this appeal we have in the first place that relating to the lack of legal capacity of the firm of Sobrinos de Ezquiaga as the liquidator of its predecessor of the same name, to exercise the rights and actions derived in favor of the latter from the agreement entered into between said firm and the defendant, Modesto Munítiz, on November 30, 1893, which lack of capacity was pleaded by the latter in the lower court and again in his brief in this second instance.

Upon this point we encounter the same difficulty as in the other action prosecuted between the same parties before the said District Court of Guayama involving the return of certain estates, the rendition of accounts and other points, which was decided yesterday by this Supreme Court, namely, that we cannot consider the evidence presented at the trial on account of it not being identified in the authentic form required by section 214 of the new Code of Civil Procedure, but only by means of the certificate of the reporter, which, as the Supreme Court has held on a number of occasions, is not the proper form of presenting to it the result of the evidence heard.

With respect to the other questions raised by Mr. Munítiz in his answer to the complaint, as to the classification which should in his judgment be given to the agreement entered into between him and Sobrinos de Ezquiaga, of a partnership in joint account, and the legal consequences to be derived from such classification, to the effect that the plaintiff firm cannot exercise an action for recovery as it does in its complaint until the termination of such partnership and according to the result of its final liquidation, the court holds that both parties being in accord as to the contents of the stipulations of the agreement in question, the entire subject is reduced to a point of law, namely, a determination of whether the classification of Munítiz, the defendant, now the appellant, is correct or not.

Upon this point this Supreme Court renews the grounds of its opinion delivered in the other action prosecuted between the said parties, involving the return of certain estates, the

rendition of accounts, and other points, to which reference has been made above. This court then held the opinion, which it now renews, that the classification by Munítiz of the agreement made between him and the firm of Sobrinos de Ezquiaga on November 30, 1893, as a joint account, is absolutely incorrect; that in order that such contract may exist it is indispensable under article 239 of the Code of Commerce in force; that the special partner, or the partner furnishing the capital, contribute to the partnership a capital which from the moment it becomes part of the firm capital, becomes subject to the prosperous or adverse results of the operations thereof, a requisite which is not present in this case, because said agreement very clearly establishes that Sobrinos de Ezquiaga had agreed to open a credit in favor of Modesto Munítiz to the extent of 25,000 *pesos* in order that he might conduct the business of the commercial establishment which he had in the town of Cayey in the houses which Sobrinos de Ezquiaga had assigned to him for the purpose, and for which purpose they opened an account current in their books in his name; Sobrinos de Ezquiaga agreeing to honor all the demands for cash and merchandise which Mr. Munítiz might make, in order that he might always have his establishment stocked, and Mr. Munítiz on his part, agreeing to make the partial payments he might be able at periods most suitable to him in order to liquidate his indebtedness as well as to pay to Sobrinos de Ezquiaga the total balance in their favor, as shown by the account current opened between them, whenever the former should deem it in furtherance of their interests and without any other condition on the part of Sobrinos de Ezquiaga than to give him advance notice of six months. These conditions do not conform to the classification of a joint account which the defendant, Modesto Munítiz, gives to the contract, because in a partnership of that character, the capital contributed by the special partner, the manager of the partnership is not obliged to return until the expiration of such partnership and then in

accordance with the results of its liquidation, but they conform exactly to the classification of a contract of commercial loan made by Sobrinos de Ezquiaga, and the participation which, under the contract, the firm of Sobrinos de Ezquiaga reserved in the profits of the commercial establishment of Mr. Munítiz in compensation of interest on the money which Mr. Munítiz did not pay and the rental of the two houses which they had assigned him together with the machinery and other appurtenances therein, to use in connection with the commercial establishment belonging to him, is not sufficient to destroy such classification, as they are perfectly compatible with a contract of loan in accordance with the provisions of article 315 of the said Code of Commerce, according to which any agreement made in favor of the creditor shall be considered as interest.

The same may be said with regard to the other clause relating to the examination and intervention which the contract grants Sobrinos de Ezquiaga in the annual balances of Mr. Munítiz, because apart from the fact that it is very logical for them to have such intervention in order to ascertain the amount of the profits due the firm, if any, it was very just and necessary that as the firm loaned such a large sum to Mr. Munítiz, without any security whatsoever, it should reserve the right to take part in the making of the balances in order to judge of the progress of his commercial transactions, and, consequently, to decide whether they should call upon Munítiz for the payment of the balance in their favor under the account current opened between them or not.

The fourth clause of the agreement which stipulated that in the event that Mr. Munítiz should find it necessary to absent himself, should fall ill or die and not be able to continue to conduct his business, or in the event of his suffering any misfortune preventing him from so doing, then Sobrinos de Ezquiaga would be empowered and authorized to take charge of the commercial firm of Munítiz and continue the same business if they should see fit, or liquidate it or do what they might

consider most beneficial to their interests and those of Munítiz, should be interpreted in the same sense; because Sobrinos de Ezquiaga lacking any security for their money, unless it were the establishment of their debtor Munítiz, it was very logical for them to reserve said right in order that if Mr. Munítiz should disappear, or should become unable to continue at the head of his establishment, Sobrinos de Ezquiaga could liquidate it or continue the same business until they had recovered their money. This is a perfectly valid agreement and compatible with the character of the transaction as explained by Sobrinos de Ezquiaga.

Consequently, if the nature of the contract involved in the agreement entered into between the firm of Sobrinos de Ezquiaga and Modesto Munítiz is perfectly well defined, and it is not admissible to assume that said contract implies a joint account, as alleged and maintained by the appellant Munítiz the firm of Sobrinos de Ezquiaga may exercise in its favor the rights arising from said contract, which include that which it has exercised in this complaint for the recovery of the balance in its favor under the account current opened in its books in the name of Munítiz, provided said firm shall prove the fulfilment of the conditions imposed upon it by the contract of giving six months' advance notice to Mr. Munítiz.

Whether the plaintiff firm has or has not complied with this requirement, and also whether the balance which it seeks to recover from Mr. Munítiz of $80,199.40 is or is not correct, we are unable to judge because we cannot enter into an examination of the evidence heard at the trial; but the District Court of Guayama has already judged this, and as the appellant Munítiz has not proved that the judgment court has erred in its findings upon the evidence upon these points, the judgment rendered by said district court on April 26 of last year, should be affirmed, with the costs of this appeal against Modesto Munítiz.

*Affirmed.*

Justices Hernández, Figueras and MacLeary concurred.

Mr. Justice Wolf did not take part in the decision of this case.